UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOSE RIVERA | : | PRISONER<br>CIVIL NO. 3:03CV645 (CFD)(WIG) |
| v. | : |  |
| HECTOR RODRIGUEZ, ET AL. | : | JANUARY 31, 2007 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants, Ricardo Ruiz and Hector Rodriguez, move for summary judgment as to all claims in the plaintiff's complaint. For the reasons discussed below, the defendants' motion should be granted.

## FACTS

The plaintiff currently is 33 years old, and is a sentenced inmate serving a lengthy sentence for conspiracy to commit assault and manslaughter, with an expected release date of May, 2030. Statement of Material Facts Not In Dispute, ¶ 1. From August 28, 2001 through May 21, 2003, the plaintiff was incarcerated at the Cheshire Correctional Institution and was housed in that facility's protective custody unit. Statement of Material Facts Not In Dispute, ¶ 2. On January 4, 2003, the plaintiff apparently fell off of his bunk bed and suffered an injury to his right ankle. Statement of Material Facts Not In Dispute, ¶ 3. On two occasions shortly after the fall, the plaintiff was seen by nurses assigned to the facility, but was absent from the institution on many days while attending a criminal trial in which he faced a charge of murder. Statement of Material Facts Not In Dispute, ¶ 4. The injury to plaintiff's ankle did not interfere with the plaintiff's ability to participate fully in his defense at his murder trial. Id.

Thereafter, on January 24, 2003, the plaintiff was seen by defendant Ricardo Ruiz[1], the medical doctor assigned to the Cheshire Correctional Institution, for the purpose of examining his right ankle. Dr. Ruiz first learned that Mr. Rivera sustained some injury to his right ankle when he saw the plaintiff on January 24, 2003, when the plaintiff informed the doctor that he jumped off his bunk and experienced pain a few weeks prior. As the facility's medical doctor, Dr. Ruiz sees patients who affirmatively seek medical attention, or who are referred to him by subordinate staff. Accordingly, Dr. Ruiz had no knowledge of Mr. Rivera's ankle injury until he saw the plaintiff on January 24, 2003. Statement of Undisputed Material Facts, ¶¶ 5, 12.

During this initial evaluation, Dr. Ruiz observed the plaintiff walking with some discomfort; while the plaintiff was able to come to the medical unit walking on his own, he returned to see the doctor after an x-ray was taken in a wheelchair. The x-ray revealed that Mr. Rivera had sustained a comminuted, displaced spiral fracture of his right fibula. In response, Dr. Ruiz contacted appropriate personnel and arranged for the plaintiff to be transferred to the University of Connecticut John Dempsey Hospital for further treatment. Statement of Material Facts Not In Dispute, ¶ 8, 9.

While at John Dempsey Hospital, the plaintiff was placed in a removable splint/cast and provided crutches to keep weight off of his ankle. The purpose of the splint was to keep the plaintiff's ankle in alignment and was not intended to allow him to walk without the aid of crutches. Statement of Material Facts Not In Dispute, ¶10.

Dr. Ruiz next saw the plaintiff on January 30, 2003. During his examination, the plaintiff complained that the splint was too loose and it rubbed and irritated his skin. Dr. Ruiz observed

---

[1] The plaintiff's reference to Dr. Ruiz as "Ruiz Ricar", is a mistake. Dr. Ruiz has been a physician licensed to practice medicine in the state of Connecticut since 1997, having received his medical degree from Boston University School of Medicine, and is board certified in internal medicine. Dr. Ruiz began serving as the medical doctor at the Cheshire Correctional Institution in January, 2002, and in January 2003 provided treatment to Jose Rivera as reflected in his medical records. See Statement of Undisputed Material Facts at ¶ 6.

no sign of skin irritation. Although there was no objective signs of irritation, Dr. Ruiz advised the plaintiff to put a sock under the splint to reduce the potential for irritation. Statement of Material Facts Not In Dispute, ¶ 11.

The plaintiff's medical records further reveal that, on February 4, 2003, the plaintiff returned the cast/splint to the medical unit, refusing to use the splint. Statement of Material Facts Not In Dispute, ¶ 12. Thereafter, on February 10, 2003, Dr. Ruiz saw the plaintiff and explained to him that the purpose of the cast was to keep his ankle in alignment, not for weight bearing. Despite this advice, the plaintiff still refused the cast. At the time of this visit, Dr. Ruiz observed no swelling or ecchymosis (i.e., bruising). Dr. Ruiz did not see the plaintiff again after February 10, 2003; the plaintiff transferred from the Cheshire correctional facility to another institution on May 21, 2003. Statement of Material Facts Not In Dispute, ¶¶ 13-14.

The appropriate care for a comminuted fracture of the fibula, such as was sustained by the plaintiff in this case, is to splint the fracture and provide crutches to avoid weight bearing until there is radiographic evidence of improvement. That is exactly what was provided to the plaintiff in this case. Statement of Material Facts Not In Dispute, ¶ 15. In fact, subsequent x-rays of the plaintiff's right ankle show that the fracture has fully healed. Statement of Material Facts Not In Dispute, ¶ 16. Critically, defendant Hector Rodriguez, at all relevant times the warden of the Cheshire correctional facility, had no responsibility for providing medical care to inmates, and in particular, played no role in treating the fracture Mr. Rivera sustained to his fibula that is the subject of this lawsuit. Statement of Material Facts Not In Dispute, ¶ 17.

# ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. § 56(e).

Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1968); H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).  Thus "[w]here the record could not lead a rational trier of facts to find for the non-moving party, there is then no 'genuine issue for trial.'"  Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987).  The record in this case,

even when considered in a light most favorable to the plaintiff, fully supports the granting of a summary judgment in favor of the defendants.

> **B.** **PLAINTIFF IS UNABLE TO ESTABLISH THAT THE MEDICAL CARE PROVIDED BY DR. RUIZ, OR ANY ACTIONS ATTRIBUTABLE TO WARDEN RODRIGUEZ, CONSTITUTED "DELIBERATE INDIFFERENCE" TO HIS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT**

Plaintiff cannot establish that defendants were deliberately indifferent to his medical condition. Accordingly, this motion for summary judgment should be granted.

Generally,

> the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. . . . prison officials must ensure that inmates receive adequate. . . . medical care. . . .

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).

> Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, sufficiently serious. . . The second requirement . . . [is that] a prison official must have a sufficiently culpable state of mind. [citations omitted]. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety. [citations omitted].

Id. at 1977.

In order to establish an unconstitutional denial of medical care, a prisoner must show that prison officials were deliberately indifferent to his serious medical needs. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) cert. denied, 115 S. Ct. 1108 (1995) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, the Supreme Court has made it clear that not every claim by an inmate that he has not received adequate medical attention is sufficient to constitute a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291 (1976).

In order to prevail in this case, the plaintiff must establish that the defendants, a doctor and a warden, were deliberately indifferent to his serious medical needs. Deliberate indifference is more than negligence. Farmer, 114 S. Ct. at 1978. "[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." Davidson v. Cannon, 474 U.S. 344, 348 106 S.Ct. 668, 671 (1986); Daniels v. Williams, 474 U.S. 327, 332-333, 106 S.Ct. 662, 666 (1986). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Daniels v. Williams, 474 U.S. at 333, 106 S.Ct. at 666 citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct 285, 292, 50 L.Ed. 251 (1976).

The deliberate indifference standard has both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) cert denied 513 U.S. 1154, 115 S.Ct. 1108 (1995). First, objectively, the deprivation must be sufficiently serious. Id. Second, the plaintiff must demonstrate that the defendant was deliberately indifferent to the plaintiff's health and safety and thus had a sufficiently culpable state of mind. Id.

The Eighth Amendment must "draw its meaning from the evolving standard of decency that mark the progress of a maturing society." Id. "Society does not expect that prisoners will have unqualified access to health care, [so] deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992) (citing Estelle, 429 U.S. at 103-04).

Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. Thomas v. Pate, 493 F.2d 151, 157 (7th Cir. 1974), cert. denied, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed. 2d 110 (1975). Moreover, courts have repeatedly held that

6

a prisoner does not have the right to the treatment of his choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986);  see also Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988); Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y. 1992).

The harm must involve a condition that may produce death, degeneration or extreme pain. See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

> Factors that have been considered include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992); accord Gutierrez, 111 F.3d at 1373 (citing McGuckin and collecting cases from other circuits employing a similar standard).

Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

A sufficiently serious deprivation is one which deprives the plaintiff of the "'minimal civilized measures of life's necessities.'"  See Id. (citation omitted).  "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (citations and internal quotations omitted).

Moreover a delay in treatment is not sufficiently serious where it does not produce an injury of constitutional dimension.

> We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. See Estelle, 429 U.S. at 107; Hathaway, 37 F.3d at 66. This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. See, e.g., Estelle, 429 U.S. at 105--106

Harrison v. Barkley, 219 F.3d at 139.

Here, plaintiff alleges that he was sustained an ankle fracture while climbing down from his bunk bed, and thereafter received a splint/cast that did not allow him to bear weight on his

7

right ankle. This is patently insufficient to state an Eighth Amendment claim. As established by Dr. Ruiz, the standard of care governing for the plaintiff's injury requires the splinting of the ankle to maintain constant alignment, and the provision of crutches to avoid weight bearing. There is no countervailing evidence to the contrary. The plaintiff no doubt suffered pain as a consequence of his ankle fracture, and perhaps the proximity of the filing of this lawsuit to the actual injury (the docket sheet shows plaintiff filed suit less than 3 months after receiving his cast and crutches) is reflective of his pain. However, it is readily apparent that neither Dr. Ruiz nor Warden Rodriguez caused the plaintiff any pain or were otherwise deliberately indifferent to plaintiff's serious medical needs.

Even if plaintiff could show a sufficiently serious condition, he still cannot prevail in this matter. Plaintiff cannot establish the second prong. Subjectively, the charged prison official must have acted with "a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 115 S.Ct. 1108 (1995); Chance, 143 F.3d at 703 (citing Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837). A prison official who is aware of a risk of harm to an inmate and responds reasonably to the risk will not be found liable under the Eighth Amendment. Farmer, 511 U.S. at 844-45. This is true even if the harm to the inmate is ultimately not avoided. See Id.

The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves." Ross v. Kelly, 784 F. Supp. 35, 45 (W.D.N.Y.

8

1992) quoting Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir.) vacated in part as moot 688 F.2d 266 (5th Cir. 1982), cert. denied 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed. 2d 795 (1983).

In McGinnis, the district court dismissed an inmate's § 1983 complaint wherein he claimed he received improper medication. On appeal, the Second Circuit Court of Appeals affirmed stating:

> [Plaintiff's] claim, however, is not that he has been completely denied needed medical care by a willful refusal of the prison authorities to assist him. Instead, he seeks compensation for what he paints as faulty judgment on the part of the prison doctor in choosing to administer one form of the same medication instead of another. As one court stated the distinction: "The prisoner's right is to medical care-not the type or scope of medical care which he personally desires. A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." [citations omitted].

United States Ex Rel. Hyde v. McGinnis, 429 F.2d at 867-68 (emphasis added).

In Forbes, an inmate claimed that prison officials were deliberately indifferent in how they treated her tuberculosis. More specifically she complained that the preventive therapy which she was offered was not the preferred therapy. The district court granted summary judgment in favor of the prison officials and on appeal, the Seventh Circuit Court of Appeals affirmed stating:

> Under the Eighth Amendment, Forbes is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.

Forbes v. Edgar, 112 F.3d at 267.

In this case, the plaintiff has conceded that the defendants did not begin to approach the level of culpability necessary to establish deliberate indifference. At his deposition, the plaintiff testified as follows:

> Q.    Do you think Dr. Ruiz just may have disagreed with the other doctor at UConn or do you think he was trying to cause you pain?

| | |
|---|---|
| A. | I don't believe he was trying to cause me pain deliberately.  You know, I just believe that he refused to do something to help me be more comfortable in the environment that I am in. |
| Q. | Okay.  So do you think maybe he had just kind of a professional disagreement with this other doctor? |
| A. | That could have been. |
| Q. | Can you think of any other reason why he would have done it? |
| A. | No. |
| Q. | In your dealings with Dr. Ruiz, I mean sometimes you just run into people where you just don't click, and I am sure that you could identify people from here, I could probably identify people at MacDougall who I feel the same way about, but is Dr. Ruiz one of those people who you thought he was out to get you or out to harm you? |
| A. | No, sir, not at all.  He was a very all right person. |
| Q. | How about the warden?  How about Warden Rodriguez? |
| A. | I never seen him. |
| Q. | All right. |
| A. | You know, but I have always -- I was a very writeable inmate.  I would write.  Any time I had a problem, I would write and voice my opinion.  So you know, I am not the type of person to stay quiet.  At the time I was having -- I was having problems with one of the correctional staff, essentially harassing me.  So outside of that, you know, there wasn't really any problems with me. |

Tr. 12/8/03 Deposition of Plaintiff at 20-21, Statement of Undisputed Material Facts, para. _____.  Indeed, there is no evidence to suggest that Dr. Ruiz even deviated from the applicable standard of care, let alone drew the subjective conclusion that the plaintiff suffered from a condition requiring other or further medical attention and withheld such attention.  The warden's defense on this issue is just as strong, given that he is not a medical doctor and had no responsibility to provide care for the plaintiff's ankle injury.  Because, as a matter of law,

plaintiff cannot establish deliberate indifference, summary judgment should issue in favor of the defendants.

### C. DEFENDANTS HAVE QUALIFIED IMMUNITY AND THUS ARE ENTITLED TO SUMMARY JUDGMENT

Because the defendants did not violate any clearly established statutory or constitutional rights of the plaintiff, they are entitled to qualified immunity.

The defense of qualified immunity is a well-settled doctrine which protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. Id. The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. See Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1997); Harlow v. Fitzgerald, 457 U.S. at 814, 102 S.Ct. at 2736.

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). "Unless the plaintiff's allegations state a claim of violation of clearly

established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery . . .". Behrens v. Pelletier, ___ U.S. ___, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery .... Until this threshold immunity question is resolved, discovery should not be allowed." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

Here, plaintiff cannot point to any clearly established law violated by the defendants which would take this case out of the protection of qualified immunity. As discussed above, Dr. Ruiz acted in accordance with the standard of care applicable to a medical doctor treating a fractured fibula, and the warden similarly acted in accordance with the standards applicable to his profession by providing a medical services unit that included a medical doctor to treat the plaintiff's condition. Accordingly, defendants Ruiz and Rodriguez have qualified immunity and summary judgment should enter in favor of the defendants.

## **CONCLUSION**

For all the foregoing reasons, defendants respectfully move for summary judgment in this matter.

>                          DEFENDANTS
>                          Hector Rodriguez, et al.
>
>                          RICHARD BLUMENTHAL
>                          ATTORNEY GENERAL
>
>
>                     BY:_____/s/_____
>                          Terrence M. O'Neill
>                          Assistant Attorney General
>                          110 Sherman Street
>                          Hartford, CT  06105
>                          Federal Bar #ct10835
>                          E-Mail: terrence.oneill@po.state.ct.us
>                          Tel.: (860) 808-5450
>                          Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 31st day of January, 2007:

Jose Rivera, No. 191824
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080

_____/s/_____
Terrence M. O'Neill
Assistant Attorney General