UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE RIVERA | : | |
| | : | PRISONER |
| v. | : | Case No. 3:03-cv-645 (CFD) |
| | : | |
| HECTOR RODRIGUEZ, et al.[1] | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jose Rivera, a Connecticut inmate confined at Northern Correctional Institution, commenced this civil rights action pro se pursuant to 28 U.S.C. § 1915. He alleges that the defendants were deliberately indifferent to his serious medical needs. The defendants have filed a motion for summary judgment. Despite notice of his obligation to respond, Rivera has not opposed the motion. For the reasons that follow, the defendants' motion is granted.

**I.   Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). The court construes the facts in the light most favorable to the nonmoving party. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir.), cert. denied, 127 S. Ct. 382 (2006).

---

[1] The named defendants are Warden Hector Rodriguez, Dr. Ricardo Ruiz, incorrectly identified as Ruiz Ricar, and Nurse John Doe. On July 14, 2003, all claims against defendant Doe were dismissed.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture.  See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990).  If the nonmoving party does not respond to the motion, the court may accept as true the moving party's factual statements.[2]  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1] statement will be deemed admitted unless controverted....").  Even if the motion is unopposed, however, the court will not grant summary judgment unless it determined that the moving party is entitled to judgment as a matter of law.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

**II.    Facts**

Because Rivera has not responded to the defendants' motion, the court deems admitted the following facts taken from the defendants' Local Rule 56(a)1 Statement.

---

[2]Rivera was notified of his obligation to respond to the motion for summary judgment and of the contents of a proper response by the defendants [doc. #14-4] and the court [doc. #15].

From August 28, 2001, through May 21, 2003, Rivera was confined in the protective custody unit at Cheshire Correctional Institution. During this time, defendant Rodriguez was the warden at Cheshire Correctional Institution. At no time was defendant Rodriguez responsible for providing medical care to inmates.

On January 4, 2003, Rivera fell when climbing down from his top bunk and injured his right ankle. Rivera was seen by medical staff two times shortly after the fall and was provided an ankle wrap and crutches. During this period Rivera was being prosecuted for murder in state court. Thus, he was absent from the correctional institution on many days. The injury did not interfere with Rivera's ability to participate fully in his defense at trial.

Defendant Dr. Ruiz was the physician at Cheshire Correctional Institution. He saw patients that were referred to him by the medical staff. On January 24, 2003, Dr. Ruiz first learned of Rivera's injury when he examined Rivera's right ankle. Rivera told Dr. Ruiz that he experienced pain in his right ankle after he jumped from his bunk a few weeks earlier. At the examination, Dr. Ruiz observed Rivera walking with some discomfort. Rivera walked to the medical unit on his own for the initial examination, but returned to the doctor in a wheelchair after an x-ray was taken. The x-ray revealed a comminuted, displaced fracture of the right fibula.

Dr. Ruiz arranged for Rivera to be taken to the University of Connecticut John Dempsey Hospital for further treatment. The proper treatment for a comminuted fracture of the fibula is to splint the fracture and provide crutches to avoid weight bearing on the ankle until x-rays show improvement. This treatment was provided. At the hospital, Rivera was placed in a removable splint/cast to keep his ankle in alignment. He also was provided crutches to keep the weight off

his ankle. The splint/cast was not intended to enable Rivera to walk without crutches.

Dr. Ruiz saw Rivera again on January 30, 2003. Although Rivera complained that the splint/cast was too loose and that it rubbed and irritated his skin, Dr. Ruiz observed no sign of skin irritation. Despite the absence of any objective signs of skin irritation, Dr. Ruiz advised Rivera to wear a sock under the splint/cast to reduce the possibility of irritation.

On February 4, 2003, Rivera indicated that he would no longer use the splint/cast and returned it to the medical unit. On February 10, 2003, Dr. Ruiz saw Rivera and explained that the purpose of the splint/cast was to keep his ankle in alignment, but Rivera refused to use it. Dr. Ruiz examined Rivera's ankle and observed no swelling or bruising. Dr. Ruiz did not see Rivera after February 10, 2003. Subsequent x-rays show that the fracture has fully healed.

**III.    Discussion**

Rivera asserts three claims in his complaint: (1) the defendants failed to x-ray his ankle or provide any treatment for a broken ankle from January 4, 2003, until January 24, 2003; (2) from January 24, 2003, through the filing of the complaint on April 3, 2003, he was not provided proper medical care for his broken ankle because he was not provided the correct cast; and (3) the defendants failed to provide follow-up medical treatment for his broken ankle because they did not return him to the hospital when a March 2003 x-ray showed that the fracture had not yet started healing. The defendants move for summary judgment on the ground that they were not deliberately indifferent to Rivera's medical needs.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble,

429 U.S. 97, 104 (1976).  To prevail on such a claim, Rivera must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  A lapse in medical care or disagreement with prison officials about what constitutes appropriate care does not necessarily state a claim cognizable under the Eighth Amendment.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (holding that mere negligence, as found in a medical malpractice claim, will not support a section 1983 claim); Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (holding that inmates do not have a constitutional right to the treatment of their choice).  The conduct of the defendants must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard.  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  An injury that a reasonable doctor would find important, a medical condition that significantly affects daily activities or causes chronic and substantial pain or a situation where the denial of treatment causes the plaintiff to suffer a permanent loss or life-long handicap, is considered "serious."  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).  Subjectively, Rivera must demonstrate that the defendants knew of and disregarded an excessive risk to his health or safety.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).

The court assumes for purposes of deciding this motion that a fractured ankle is a serious medical need. Thus, the court will consider only whether defendants Ruiz and Rodriguez were deliberately indifferent to that medical need.

Dr. Ruiz first became aware of Rivera's condition on January 24, 2003, when he examined Rivera and ordered an x-ray. Upon reviewing the x-ray, Dr. Ruiz immediately sent Rivera to the hospital where he received the splint/cast and crutches. Rivera refused to use the splint/cast after about ten days, despite Dr. Ruiz' explanation that the splint/cast was meant to keep his ankle in alignment for healing, not to facilitate weight bearing.

Rivera has presented no evidence to support his allegations that he was provided the incorrect cast and that his ankle had not begun healing by early March and still has not healed. The defendants have submitted the relevant medical records. The hospital records do not indicate any other type of cast was required or recommended. See Doc. #14-2, Defs.' Local Rule 56(a)1 Statement, Ex. 4 at 39-41. Contrary to Rivera's allegation, the March 4, 2003 x-ray showed improving alignment and healing. The fracture had healed completely by June 2003. See Doc. #14-2, Ex. 4 at 35, 31. Although the medical records support Rivera's allegation that his ankle was not x-rayed until January 24, 2003, there is no evidence that Dr. Ruiz was aware of his condition between January 4, 2003 and January 24, 2003. The court concludes that the allegations demonstrate, at most, a disagreement over the treatment provided by Dr. Ruiz which is not cognizable under section 1983. The defendants' motion for summary judgment is granted as to the claims against Dr. Ruiz.

Although Rivera includes Warden Rodriguez as a defendant, he neither alleges nor provides any evidence suggesting that defendant Rodriguez was aware of his medical condition. During his deposition, Rivera stated that he named defendant Rodriguez only because he was the warden.  See Doc. #14-2, Ex. 1 at 19.  Because there are not facts suggesting the defendant Rodriguez was aware of Rivera's medical needs, he could not be deliberately indifferent to them. The defendants' motion for summary judgment is granted as to all claims against defendant Rodriguez.

## IV.   Conclusion

The defendants' motion for summary judgment [**Dkt. No. 14**] is **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated this 27th day of March, 2007, at Hartford, Connecticut.

/s/ Christopher F. Droney
Christopher F. Droney
United States District Judge